IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DALE BRYANT,

      Plaintiff,

vs.

      Case No. 22-cv-12066-VAR-KGA
      Hon. Victoria A. Roberts

CITY OF TAYLOR, a municipal
corporation, Officer MAX DORFLINGER,
a Taylor Police Officer, in his individual
capacity, Officer AARON LAYNE, a
Taylor Police Officer, in his individual
capacity, and Animal Control Officer
LANNY HALL, Taylor Animal Control
Officer, in his individual capacity,

      Defendants.

_____/

## ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND RELIANCE UPON JURY DEMAND

Defendants City of Taylor, Officer Max Dorflinger, Officer Aaron Layne and Officer Lanny Hall, through their counsel, Mark W. Peyser, Esq. and the law firm of Howard & Howard Attorneys PLLC, answer plaintiff Dale Bryant's Complaint as follows:

### INTRODUCTION

1.     Dale Bryant is the plaintiff in this case. He is a Black man whose legs were amputated after he was shot many years ago, and he must use a wheelchair that allows him to lie on his front while using his arms to power the wheels.

1

**ANSWER:**   Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.

2.      Mr. Bryant's troubles began when his dog, King, a purebred German Shepherd, pulled a lead line into his crate, entangled his right hind leg, and created a risk of fracture.

**ANSWER:** Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.

3.      When Mr. Bryant was unable to free King, he called his sister, Ms. Kim Bryant, for help. She agreed to assist, but she lived some distance away, so Mr. Bryant had to wait. As he waited, King became more distressed and Mr. Bryant was concerned that King might break his leg before his sister arrived, so he called 9-1-1 for help.

**ANSWER:** Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.

4.      Notwithstanding King's predicament and Mr. Bryant's distress, this case is about more than a man and his dog. It is about a Black, disabled man who lives in a city with a police department notorious for acts of hostility toward Black persons and a policy that disrespects and offends disabled persons. This case is about a city that fails to employ emergency response personnel with the knowledge, training, and judgment needed to not only lend a helping hand during non-criminal crises like that faced by Mr. Bryant and his pet, but to also do so in a way that protects the rights of citizens.

**ANSWER:**   Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves

2

**plaintiff to his proofs.  Further defendants submit that the complaint speaks for itself and any summary of what the case is about as set forth in this paragraph is irrelevant, immaterial as it is not fundamental to pleading a cause of action in this matter.  Defendants reserve the right to move to strike this paragraph.**

5.      The defendant officers who responded to the 9-1-1 call are employed by the Taylor, Michigan Police Department. It is a troubled department that was the subject of a report by the ACLU of Michigan to the U.S. Department of Justice, which highlighted not only numerous complaints by citizens of police use of excessive force, suspected racial discrimination, and callous disregard of civil rights, but also practices designed to prevent litigation challenges to police misconduct. The ACLU report highlights incidents of summarily dispensing excessive punishment for behavior that police officers perceive as a challenge to their authority and the escalation of tense encounters.

**ANSWER: Defendants admit the allegations that the officers who responded to the 911 call, at all times is relevant here to, were employed by the City of Taylor as Taylor Police officers or an Animal Control Officer (ACO) . Defendants deny emphatically that the remaining allegations after the first sentence of this paragraph, as the same is untrue, and further, state that it is irrelevant and immaterial to this case as it is not a fundamental requirement to plead such self-serving and inflammatory allegations given the context of the claims pled.  Defendants reserve the right to move to strike this paragraph.**

6.      Evidence of the police department's culture of insensitivity and, in some cases, cruelty, is apparent from a police department policy that warns officers to be suspicious of people who have disabilities, cautioning officers that *"persons with disabilities often rely on their disability to attempt to manipulate and control their environment."* The same policies warn that mobility-impaired suspects *"may*

3

*be handicapped, but they are not stupid, and expect you to empathize with their overt condition."*

**ANSWER:** **Defendants deny the allegations as they are untrue.**

7.      After officers who responded to Mr. Bryant's emergency call freed King, in the spirit of the police department's policy concerning persons with disabilities, they wrongly accused Mr. Bryant of animal cruelty and told him that he should not have a dog like this "in his condition."

**ANSWER:** **Defendants deny the allegations as they are untrue.**

8.      Thereafter, the City of Taylor kept King in its animal shelter for nearly four months while charging Mr. Bryant daily kennel fees. During the proceedings on the animal cruelty charge, Defendants admitted that Mr. Bryant had not committed animal cruelty.

**ANSWER:** **Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

## JURISDICTION AND VENUE

9.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because this is a civil action seeking redress for the deprivation of rights secured by the United States Constitution. Supplemental jurisdiction over claims arising under state law is proper under 28 U.S.C. § 1367.

**ANSWER:** **Admitted**

10.      Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims asserted occurred in Wayne County, which is within the Eastern District of Michigan.

**ANSWER:** **Admitted**

## PARTIES

11.     Plaintiff Dale Bryant is a Black man who was shot by an intruder in his apartment building over forty years ago. He survived the shooting, but both of his legs were amputated as a result of his injuries. Mr. Bryant called Defendants for help when his dog's hind leg became tangled in its lead line. In response, his dog was taken by the responding officers.

**ANSWER: Defendants admit that plaintiff is a black man but deny the remaining allegations for lack of knowledge or sufficient information upon which to form a belief as it relates to an alleged shooting and the reason for his amputated legs. Defendants admit that they were called by Mr. Bryant for help with respect to his dog who became tangled in its lead line while being maintained in its cage.**

12.     Defendant City of Taylor is a municipal corporation organized under the laws of the State of Michigan. The Taylor Police Department and Animal Shelter are divisions or departments of the City of Taylor.

**ANSWER: Admit.**

13.     Defendant Max Dorflinger is, or was at all times relevant to this Complaint, a City of Taylor police officer. Officer Dorflinger is being sued in his individual capacity.

**ANSWER: Admit that Defendant Max Dorflinger is, or was at all times relevant to this Complaint, a City of Taylor police officer.**

14.     Defendant Aaron Layne is, or was at all times relevant to this Complaint, a City of Taylor police officer. Officer Layne is being sued in his individual capacity.

**ANSWER: Admit that Defendant Aaron Layne is, or was at all times relevant to this Complaint, a City of Taylor police officer.**

15. Defendant Lanny Hall is, or was at all times relevant to this Complaint, an Animal Control Officer for the City of Taylor. ACO Hall is being sued in his individual capacity.

**ANSWER: Admit that Defendant Lanny Hall is, or was at all times relevant to this Complaint, an Animal Control Officer for the City of Taylor.**

## FACTS

**Mr. Bryant and King**

16. Mr. Bryant lives alone in a house in the City of Taylor. Because both of his legs have been amputated, he gets around his house by using a wheelchair that allows him to lie face down while he uses his arms to push the wheels.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

17. In early 2021, Mr. Bryant adopted a German Shepherd puppy, whom he named King. King was just six weeks old when Mr. Bryant adopted him. Mr. Bryant intended that King would eventually become a service dog, but the two also enjoy each other's companionship.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

18. Because Mr. Bryant cannot walk and because his property is not fenced in, King is housetrained. This means that rather than having to be let outside to relieve himself, King is trained to do so in a specific area of the house. Mr. Bryant then immediately cleans up after King.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

19.    Mr. Bryant uses a long lead line that he attaches to the front of his home, which gives King more freedom outside so that King can get exercise. Mr. Bryant's family assists by taking King on walks and to the veterinarian on a regular basis.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

20.    One common method of housetraining puppies is by crate training. Crate training is the process of teaching a pet to accept a cage as its own safe, familiar location. It helps pet owners housetrain puppies because the dog will not want to soil its own space. It also helps to keep puppies out of mischief when the owner is not around to supervise them, and helps to provide them with a safe, comfortable retreat. Dogs enjoy the comfort and security of their crates.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

21.    Mr. Bryant crate trained King so that King has a safe, secure space to call his own, and so that King only relieves himself outside or in designated places in the home, which Mr. Bryant immediately cleans.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

7

22.   King is cared for and well-loved by Mr. Bryant and his family. They are diligent about his veterinary appointments and daily care.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

**King pulls his lead line into his crate and tangles his hind leg in it**

23.   On the evening of April 15, 2021, Mr. Bryant fed King, gave him fresh water, let him relieve himself, and cleaned up. King then retired to his crate while Mr. Bryant went to the living room to watch television for the evening.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

24.   Mr. Bryant had not been in the living room for long when he heard a noise that sounded like King flopping around as though he was playing. Mr. Bryant decided to investigate the noise to make sure King was not hurt.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

25.   The lead line that Mr. Bryant used at the time was a small red chain that was outside of King's crate but attached to the bottom of it. When Mr. Bryant made his way over to King, King started crying and sat up. Mr. Bryant then saw that King had pulled the entire lead line into the crate and completely tangled his hind legs in it.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

26.     Mr. Bryant tried to free King's leg, but the longer that King was stuck, the more distressed he became. This, in turn, caused King to move in such a way that caused him to become even more tangled. During the commotion and King's escalating stress, King had a bowel movement and rolled around in his feces while he was struggling to free himself.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

27.     Mr. Bryant picked up a knife, thinking he could cut the lead line, but King was so tangled and panicking so much that Mr. Bryant quickly determined that was not a good idea. He called Ms. Kim Bryant (his sister), and asked her to come with wire cutters to help. She agreed but lived at least twenty minutes away.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

28.     While Mr. Bryant waited for his sister, he began to worry that King was going to break his leg before she arrived.

**ANSWER: Defendants neither admit nor deny the allegations for lack of knowledge or sufficient information upon which to form belief and leaves plaintiff to his proofs.**

29.     Left with no other choice and afraid for King, Mr. Bryant dialed 9-1-1 and asked for help.

**ANSWER: Defendants admit that the Taylor Police Department 911 was called by Mr. Bryant.**

**Officers arrive at Mr. Bryant's home**

30.     Officers Dorflinger and Layne arrived at Mr. Bryant's home in response to his request for help. They approached the house and looked through the window at the top of the door. Upon seeing Mr. Bryant through the window, one officer exclaimed, "Oh my god. This guy is in a wheelchair laying straight down!" The other officer laughed and responded, "Oh, shit!" The first officer continued, "I've never seen something like this before." Mr. Bryant then opened the door.

**ANSWER:    Defendants admit that officers Dorflinger and Layne were dispatched to plaintiff's home and upon arrival plaintiff opened the door. Defendants admit that whatever they said that was recorded by their body cam is what they said.  As to the remaining allegations defendants neither admit nor deny the same for lack of knowledge of sufficient information upon which to form belief and leaves plaintiff to his proofs.**

31.     The officers entered the home and saw King. Immediately, one officer contacted the dispatcher to request that Animal Control Officer Lanny Hall ("ACO Hall") be sent to the home.

**ANSWER:  Admit.**

32.     During the time that Officers Dorflinger and Layne were at the home, Officer Dorflinger commented that Mr. Bryant should not own a dog because of his disability. Further, even though it was only King's hind legs that were tangled, Officer Dorflinger accused Mr. Bryant of trying to "strangle" King.

**ANSWER:** Defendant Dorflinger admits that he did have certain conversation with the plaintiff about dog ownership. Defendant Dorflinger admits that whatever he said that was recorded by his body cam is what he said. The remaining defendants neither admit nor deny the allegations contained therein for lack of knowledge or sufficient information upon which to form a belief and leaves plaintiff to his proofs.

33.    Officers Dorflinger and Layne then saw the feces in the crate. Without gathering any information from Mr. Bryant, they declared that the feces was "not all from right now," and that they were "going to talk about this" with Mr. Bryant.

**ANSWER:** Defendant Dorflinger and Layne admit that they did have certain conversation with the plaintiff about dog ownership and the condition of the crate, which is more properly characterized as a cage. Defendants admit that whatever they said that was recorded by their body cam is what they said. As it relates to the City and ACO Hall, said defendants neither admits nor denies the allegations contained therein for lack of knowledge or sufficient information upon which to form a belief and leaves to plaintiff to his proofs.

34.    The officers did not talk about anything with Mr. Bryant. Instead, they freed King from the lead line, concluded with no basis that the feces was "at least a week" old, and told Mr. Bryant that animal control was coming to take King. The officers did not listen to Mr. Bryant when he tried to address their concerns, and they did not give him an opportunity to explain.

**ANSWER:** Defendant police officers deny the allegations contained therein in the manner and form alleged. Defendant City and Animal Control Officer

11

Hall (ACO Hall) neither admits nor denies the allegations contained therein for lack of knowledge or sufficient information upon which to form a belief and leaves plaintiff to his proofs.

35.     The officers demonstrated a callous - if not cruel - approach to Mr. Bryant's distress by jumping to offensive and incorrect conclusions, and then escalating an already-tense encounter by taking his pet without the benefit of an assessment by animal specialists.

**ANSWER: Defendants deny the allegations contained therein for the reason they are true. Defendants affirmatively state that the police officers observed that the dog appeared to be very malnourished; that its fur was matted with its own feces, and that throughout the inside the house the officers observed several small piles of dog feces.**

**Defendants impound King while trying to intimidate Mr. Bryant and his sister**

36.     ACO Hall arrived at Mr. Bryant's home with the animal control vehicle. While the officers were putting King in the vehicle, Mr. Bryant's sister (Ms. Kim Bryant) arrived. Mr. Bryant, frustrated and upset that the people he called to help him were instead taking his pet, was inside the home.

**ANSWER: Defendants admit that ACO Hall did arrive at plaintiff's home, and that the police officers assisted putting the dog into ACO Hall's vehicle. As to the remaining allegations the defendants neither admit nor deny the same for lack of knowledge or sufficient information upon which to form a belief and leaves believes plaintiff to his proofs.**

37.   Ms. Bryant stood outside of the house when ACO Hall approached her with something resembling a book of receipts. Without any explanation, ACO Hall thrust the book at her and said, "Sign this." When Ms. Bryant asked what ACO Hall was asking her to sign, he responded that she was signing the dog over to ACO Hall.

**ANSWER: Defendants neither admit nor the allegations contained therein in the manner and form alleged and for lack of knowledge or sufficient information upon which to form a belief and leaves plaintiff to his proofs.**

38.   Ms. Bryant refused and said that King belonged to Mr. Bryant. By this time, Officer Dorflinger had joined Ms. Bryant and ACO Hall near the front of Mr. Bryant's house. In an effort to defuse the situation, Ms. Bryant offered to take custody of King. ACO Hall responded, "No, this is my dog now."

**ANSWER: Defendants neither admit nor the allegations contained therein in the manner and form alleged and for lack of knowledge or sufficient information upon which to form a belief and leaves plaintiff to his proofs.**

39.   Ms. Bryant responded that King still belonged to Mr. Bryant, to which ACO Hall responded, "We'll see." Officer Dorflinger then said, "[Mr. Bryant] doesn't need a dog, he can't even take care of himself."

**ANSWER: Defendants neither admit nor the allegations contained therein in the manner and form alleged and for lack of knowledge or sufficient information upon which to form a belief and leaves plaintiff to his proofs.**

40. ACO Hall then told Ms. Bryant that if she still refused to sign King over to him, Mr. Bryant would face expensive, daily kennel charges while King was impounded. ACO Hall then said, "[Mr. Bryant] can just get another dog," and again added, "This is my dog."

**ANSWER: Defendants neither admit nor the allegations contained therein in the manner and form alleged and for lack of knowledge or sufficient information upon which to form a belief and leaves plaintiff to his proofs.**

41. After it became apparent that King would not be voluntarily surrendered to the officers, the officers prepared to leave with King in their custody. However, before they did so, Officer Dorflinger wrote Ms. Bryant a ticket because the tab on her license plate was expired.[1]

**ANSWER: Defendants neither admit nor the allegations contained therein in the manner and form alleged. Further, Ms. Bryant was issued a ticket because her vehicle was unregistered.**

42. Officer Dorflinger wrote in his police report that he ticketed Ms. Bryant because she had blocked the egress of the officers' vehicles, but this was untrue as there was nothing illegal about the way that the vehicle was parked. It was parked along the curb in front of the house next to Mr. Bryant's. As Officer Dorflinger presented Ms. Bryant with the ticket, he revealed that the real reason he had ticketed her was "because of [her] attitude."

**ANSWER: Denied in the manner and form alleged. Further, Ms. Bryant was issued a ticket because her vehicle was unregistered.**

---

[1] Ms. Bryant's license plate tab was expired, but these events occurred during the COVID-19 crisis, during which appointments at the Secretary of State for renewals were severely backlogged. Ms. Bryant had an appointment pending, but was forced to schedule it out by three months.

**Defendants keep King despite admitting that there was no animal cruelty**

43.    During the proceedings concerning Mr. Bryant's animal cruelty charges, the City of Taylor confined King at its animal shelter while saddling Mr. Bryant with expensive, daily kennel fees.

**ANSWER: Defendants admit that the City of Taylor had custody of King and housed the dog at its animal shelter and that as a result Mr. Bryant was responsible for the daily kennel fees.**

44.    Defendants continued to offer to drop all of the charges and waive the fees if Mr. Bryant simply surrendered King to them. ACO Hall did not want to agree to any resolution that allowed for King to be returned to Mr. Bryant.

**ANSWER:    Defendants deny the allegation contained therein in the matter and form alleged and leaves plaintiff to his proofs.**

45.    ACO Hall further admitted during the proceedings that there was no animal cruelty, and that the officers initially had no intention of impounding King. ACO Hall stated that the officers only impounded King because Mr. Bryant was "rude."

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

46.    ACO Hall then opined that Mr. Bryant's house was "too small" for King, that King was "big and wild," and that Mr. Bryant would not be able to take

care of him. ACO Hall suggested that he could find a new dog for Mr. Bryant himself if Mr. Bryant surrendered ownership of King.

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

47.    Desperately missing King and concerned for King's welfare, Mr. Bryant repeatedly called the animal shelter to ask about King. Eventually, though, they told Mr. Bryant that they could not give him any more information.

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

48.    Mr. Bryant was distraught about having King taken away from him, and cried about it every day.

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

49.    By the time that Mr. Bryant's attorney convinced Defendants to return King, dismiss the charges, and waive the nearly $2,000 in kennel fees that had accumulated during the ordeal, Defendants had kept King at the animal shelter for nearly four months.

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

50.     King had missed Mr. Bryant as well. When Mr. Bryant's other sister, Ms. Sabrina Bryant, came to pick up King from the animal shelter, King was initially hesitant to go with her. But she had brought a blanket belonging to Mr. Bryant to soothe King. Once King sniffed the blanket, he curled up in the backseat of her car and let her take him home to Mr. Bryant.

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

51.     When King was finally returned to Mr. Bryant, the veterinarian would not even give King his next round of shots because he was too malnourished from the nearly four months in Defendants' care. Mr. Bryant had to work to get King back to a healthy weight so that he could receive his next round of shots.

**ANSWER: Defendants neither admit nor deny of the allegation contained therein for lack of knowledge or sufficient information upon which to form believe leaves plaintiff to his proofs.**

**Facts Relevant to Municipal Custom, Policy, or Practice**

52.     The City of Taylor maintains customs or policies that encourage its officers to seek out crime where none exists and to be suspicious of people with disabilities. Further, Taylor's ordinances provide its animal control officer with

unfettered discretion regarding impounded animals and authorizes exploitative fees for those animals that have been impounded.

**ANSWER: Defendants deny the allegations for the reason they are untrue.**

53.    The Taylor Police Department maintains an offensive and discriminatory written policy that warns officers to be suspicious of people who have disabilities, cautioning officers that "persons with disabilities often rely on their disability to attempt to manipulate and control their environment."[2]   The same policies warn that mobility-impaired suspects "may be handicapped, but they are not stupid, and expect you to empathize with their overt condition."[3]

**ANSWER: Defendants deny the allegations for the reason they are untrue**

54.    The City of Taylor has not only issued these policies, it has also failed to train its officers to recognize that treating people with disabilities with suspicion is not appropriate in response to a situation where no crime has been committed and the person who has the disability has instead called for help. The City of Taylor has also failed to train its officers how to understand and identify the needs of people with disabilities and how to provide an appropriate response to such calls.

**ANSWER: Defendants deny the allegations for the reason they are untrue**

55.    The Taylor City Code provides that the animal shelter is within the jurisdiction and control of its department of public works, and is to be supervised by an animal control officer who has the authority to impound animals.[4]   When the animal shelter releases an animal to its owner after the animal control officer impounds it, the owner must pay a pound fee in an amount prescribed by city

---

[2] TAYLOR POLICE DEPARTMENT, Policy Number 5.09 (issued May 10, 2019) (emphasis in original).
[3] *Id.*
[4] TAYLOR, MICH., CODE OF ORDINANCES ART. IV § 6-176.

council.[5] The City of Taylor authorizes a pound fee of $30 per day and $35 for each additional day that it keeps an animal from its owner.[6]

**ANSWER: Defendants neither admit nor deny the allegations contained therein in the manner and form alleged and states that the Taylor city code which is applicable to animal shelters speaks for itself and no further answers required.**

56.     The City of Taylor further empowers the Animal Control Officer to use his judgment to determine whether an impounded animal is "valuable or otherwise desirable of keeping," allowing him to "dispose of the animal to any person who will undertake to keep and harbor the animal... who shall satisfy the animal control officer that the person is capable of fulfilling such undertaking.[7]

**ANSWER: Defendants neither admit nor deny the allegations contained therein in the manner and form alleged and states that the Taylor city code which is applicable to animal shelters speaks for itself and no further answers required.**

57.     Imposing fees of $35 per day while requiring that the Animal Control Officer be satisfied that a person is capable of taking care of an animal all but guarantees that people whose animals are taken from them will have no choice but to surrender the animals, especially in an instance where the Animal Control Officer may find the impounded animal to be valuable.

**ANSWER: Defendants neither admit nor deny the allegations contained therein in the manner and form alleged and states that the Taylor city code**

---

[5] TAYLOR, MICH., CODE OF ORDINANCES ART. IV § 6-180(a)(1).
[6] CITY OF TAYLOR, Fee Schedule, Effective 7/1/21 (Revised 1/04/2022) *available at* https://www.cityoftaylor.com/DocumentCenter/View/10515/7-1-21-Fee-Schedule-Council-Approved--Revised-1-04-22.
[7] TAYLOR, MICH., CODE OF ORDINANCES ART. IV § 6-182.

which is applicable to animal shelters speaks for itself and no further answers required.  Further the allegations are not factual but conclusory and therefore are not proper in the context of a complaint.

58.    Taylor police officers have a well-documented history of reacting to a wide range of situations in an overly aggressive, unconstitutional manner. This includes summarily dispensing excessive punishment for behavior that they perceive as a challenge to their authority (such as a person in a traffic stop asking for a reason for the stop) and escalating interactions with people instead of de- escalating tense encounters.[8]

**ANSWER**: **Defendants deny the allegation contained therein in the manner and form alleged for the reasoning they untrue, and further state that the allegations are conclusory, irrelevant, immaterial, and inflammatory, and do not comply with the court rules with respect to pleading facts in support of stated causes of action.  Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.**

59.    The City of Taylor is aware of their employees' behaviors because a complaint was filed with the Civil Rights Division of the United States Department of Justice, outlining multiple encounters that illustrate the officers' toxic culture of policing.[9] Many of the events documented within the complaint were publicized in the media long before they were compiled into one document.

---

[8] ACLU OF MICHIGAN, Complaint regarding Civil Rights Violations by the Taylor, Michigan Police Department (Oct. 7, 2021), *available at* https://www.aclumich.org/sites/default/files/field documents/aclu complaint to d oj re taylor with attachments.pdf.
[9] *Id.*

**ANSWER:** Defendants deny the allegation contained therein in the manner and form alleged for the reasoning they untrue, and further state that the allegations are conclusory, irrelevant, immaterial, and inflammatory, and do not comply with the court rules with respect to pleading facts in support of stated causes of action. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.

60.     Further, the United States Department of Justice Complaint was brought *after* a letter outlining one such encounter was sent to the Taylor Police Department, in which the ACLU of Michigan urged the department to institute policy revisions, re-trainings, and discipline where appropriate.[10] The letter further outlines de-escalation techniques that could be used during many police encounters.

**ANSWER:** defendants neither admitted nor the allegations contained therein for lack of knowledge or sufficient information upon which to form a belief leads planet to its proofs. Further defendants state that the allegations are conclusory, irrelevant, immaterial, and inflammatory, and do not comply with the court rules with respect to pleading facts in support of stated causes of action. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.

---

[10] ACLU OF MICHIGAN, *ACLU of Michigan Urges Taylor Police to Change Policy and Training After Violent Arrest of Calvin Jones* (May 25, 2017), https://www.aclumich.org/en/news/aclu-michigan-urges-taylor-police-change-policy-and-training-after-violent-arrest-calvin-jones.

61.    The City of Taylor continues to turn a blind eye to its employees' actions during police encounters. In turn, the City of Taylor's employees continue to employ tactics that escalate already-tense situations, criminalize incidents that are not crimes, and punish people for perceived challenges to their authority.

**ANSWER: Defendants any the allegations contained the rating for the racer untrue. Further defendants state that the allegations are conclusory, irrelevant, immaterial, and inflammatory, and do not comply with the court rules with respect to pleading facts in support of stated causes of action. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.**

62.    By allowing its employees to behave in this manner in response to non-criminal emergency calls, in addition to its offensive policies regarding people with disabilities and its troubled history with Black people, the City of Taylor will deter Black people and people with disabilities from contacting 9-1-1 when they have emergencies and need assistance.

**ANSWER: Defendants any the allegations contained the rating for the racer untrue. Further defendants state that the allegations are conclusory, irrelevant, immaterial, and inflammatory, and do not comply with the court rules with respect to pleading facts in support of stated causes of action. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.**

**COUNT ONE**
**42 U.S.C. § 1983**
**Violation of the Fourth Amendment**
**Illegal Seizure of Property**

63.    The Fourth Amendment to the United States Constitution prohibits unreasonable seizures of persons or property, and the Fourth Amendment is incorporated against the States by the Fourteenth Amendment. Persons violating the Fourth Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

**ANSWER: Defendants neither admit nor deny the allegations contained therein in the manner form alleged as the same calls for a legal conclusion. Further, defendants state that the 4th amendment to the united states constitution speaks for itself and no further answer is required.**

64.    Defendants Dorflinger, Layne, and Hall, while acting under color of state law, violated Mr. Bryant's clearly established right to be free of unreasonable seizures by unlawfully seizing and impounding his dog on April 15, 2021.

**ANSWER:  Defendants deny the allegations contained therein for the reason they're untrue.**

65.    Specifically, Defendants had no warrant authorizing such a seizure and lacked reasonable suspicion and probable cause to believe that the dog seized from Mr. Bryant was being subjected to animal cruelty under any legal authority.

**ANSWER: Defendants deny the allegations contained therein for the reason they're untrue.  Defendants affirmatively state that the police officers observed that the dog appeared to be very malnourished; that its fur was matted with its**

own feces, and that throughout the inside the house the officers observed several small piles of dog feces.

66. Under 42 U.S.C. § 1983, municipal defendants are liable for their unconstitutional customs, policies, and practices.

**ANSWER: Defendants deny the allegations contained therein in the matter and form alleged and leaves plaintiff to his proofs. Further, the allegation sets forth a legal conclusion and do not plead facts as required under the court rules. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.**

67. The unconstitutional acts of Defendants Dorflinger, Layne, and Hall were undertaken pursuant to, and proximately caused by, unconstitutional customs, policies, or practices of Defendant City of Taylor of criminalizing people with disabilities and allowing animal control officers to exert complete control over impounded animals while charging excessive fees for their owners to recover them.

**ANSWER: Defendants deny the allegations contained therein in the matter and form alleged and leaves plaintiff to his proofs. Further, the allegation sets forth a legal conclusion and do not plead facts as required under the court rules. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.**

68.     The unconstitutional customs, policies, or practices includes, but are not limited to, the City of Taylor's formal or tacit approval of its employees' conduct, deliberately indifferent failure to train its officers, and deliberately indifferent failure to supervise and discipline its officers, all of which proximately caused the constitutional deprivation and harm suffered by Mr. Bryant.

**ANSWER: Defendants deny the allegations contained therein in the matter and form alleged and leaves plaintiff to his proofs. Further, the allegation sets forth a legal conclusion and do not plead facts as required under the court rules. Defendants reserve the right to move to strike these allegations for failing to comply with the pleading requirements.**

## COUNT II

### Illegal Seizure of Property
### in Violation of Article I, § 11 of the Michigan Constitution

69.     Michigan's Constitution prohibits the unreasonable seizure of one's possessions and property. Mich. Const, art. I, § 11.

**ANSWER: Defendants neither admit nor deny the allegations contained therein in the manner form alleged as the same calls for a legal conclusion. Further, defendants state that the Michigan Constitution speaks for itself, and no further answer is required.**

70.     Officers Dorflinger, Layne, and Hall seized King without probable cause or a warrant.

**ANSWER:** Denied that there was not probable cause to seize the dog as it is untrue. Further, a warrant was not issued nor was one required as the officers had probable cause to seize the dog.

71.   The City of Taylor is liable for the actions of Officers Dorflinger, Layne, and Hall because, under the Michigan Constitution, people who have been deprived of a constitutional right can seek redress through the courts even without a custom or policy.

**ANSWER:** Defendants neither admit nor deny the allegations contained therein in the manner form alleged as the same calls for a legal conclusion. Further, defendants state that the Michigan Constitution speaks for itself, and no further answer is required.

72.   Cases that hold that there is no municipal liability under the Michigan constitution have reached this holding because municipalities can be held liable under 42 U.S.C. § 1983. However, there is no vicarious liability for municipalities under 42 U.S.C. § 1983. Because there is no claim for vicarious liability against the City of Taylor under 42 U.S.C. § 1983, the City of Taylor can be held vicariously liable under the Michigan Constitution.

**ANSWER:** Defendants neither admit nor deny the allegations contained therein in the manner form alleged as the same calls for a legal conclusion. Further, defendants state that the Michigan Constitution speaks for itself, and no further answer is required

## COUNT III
### Malicious Prosecution
### in Violation of Michigan Common Law
### and/or Mich. Comp. Laws § 600.2907

73.    Michigan law protects people from having criminal proceedings brought against them without probable cause and for a purpose other than bringing an offender to justice.

**ANSWER: Defendants neither admit nor deny the allegations contained therein in the manner form alleged as the same calls for a legal conclusion. Further, defendants state that Michigan law speaks for itself, and no further answer is required**

74.    Defendants Dorflinger, Layne, and Hall brought animal cruelty charges against Mr. Bryant without probable cause to believe that he was committing the crime of animal cruelty.

**ANSWER: Defendants deny the allegations for the reason they are untrue.**

75.    Further, Defendants Dorflinger, Layne, and Hall did not bring the charges for the purpose of bringing an offender to justice. They brought the charges for the purpose of punishing Mr. Bryant for being "rude."

**ANSWER: Defendants deny the allegations for the reason they are untrue.**

76.    There was no justification for charging Mr. Bryant with animal cruelty, and the matter was resolved in his favor.

**ANSWER: Defendants deny the allegations for the reason they are untrue.**

77. The actions of Defendants Dorflinger, Layne, and Hall deprived Mr. Bryant of his property for nearly four months and caused him great distress.

**ANSWER: Defendants deny the allegations for the reason they are untrue.**

## DEMAND FOR RELIEF

**WHEREFORE,** Defendants respectfully request this Honorable Court to dismiss Plaintiff's Complaint with prejudice and award Defendants such further relief as the Court finds Defendants are entitled to.

## AFFIRMATIVE DEFENSES

Defendants City of Taylor, Officer Max Dorflinger, Officer Aaron Layne and Officer Lanny Hall, through their counsel, Mark W. Peyser, Esq. and the law firm of Howard & Howard Attorneys PLLC, state the following as their Affirmative Defenses:

1. That all or portions of Plaintiff's claims as pled are barred by the applicable statute of limitations.

2. All or part of Plaintiff's claim is barred by the principles and doctrines of governmental immunity, absolute immunity, and/or qualified immunity granted by law, state and/or federal statute.

3.     Plaintiff's claims are barred for the reason that the Defendants herein are entitled to qualified immunity based upon their good faith efforts utilized in the exercise of their duties.

4.     Plaintiff's claims are barred for the reason they sound in "simple negligence" or "ordinary negligence" and the conduct complained of although denied by the Defendants is not conduct contemplated to provide relief under 42 U.S.C. §1983.

5.     Any of Plaintiff's claims that sound in state law must be dismissed in that the Defendants herein are entitled to the statutory immunity provided within MCL 691.1407, *et seq.*

6.     At no time did Defendants herein engage in any activity or conduct that was reckless or committed with a lack of concern as to whether any injury would result therefrom.

7.     At no time were any of Defendants' actions or inactions committed or omitted with any discriminatory intent.

8.     At no time did any of the conduct of these Defendants amount to gross negligence.

9.     At all times relevant these Defendants were performing discretionary functions and using good faith efforts in the exercise of their duties and at no time did their conduct violate clearly established constitutional or statutory rights of

which they knew or of which a reasonable person should have known and, therefore, at a minimum, they would be entitled to the protection of the doctrine of qualified immunity.

10.   At all times relevant Defendants were performing discretionary functions and at no time did they undertake any action or inaction with malicious intention to cause a deprivation of constitutional or statutory rights or other injury.

11.   Plaintiff's Complaint fails to plead facts in avoidance of immunity accorded by law and, as such, the Defendants herein are entitled to judgment as a matter of law.

12.   Any injury or damage to person or property sustained by Plaintiff herein was through Plaintiff's contributory and/or comparative fault.

13.   There exists no proximal causation between any alleged act, omission, or breach of duty by the Defendants and Plaintiff's alleged injuries and/or damages.

14.   Plaintiff's claim may be barred in whole or in part because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, assignment, failure to mitigate damages, lack of jurisdiction over the subject matter, or other disposition of the claim before commencement of the action.

15.   Plaintiff's Complaint fails to state a claim upon which relief can be granted.

16.     Should Plaintiff seek any claim for non-economic damages, same are barred by MCL 600.2959 for the reason Plaintiff's fault is greater than the aggregate fault of the other person or persons that contributed to Plaintiff's injuries, whether or not parties to this action.

17.     There are no genuine issues as to any material fact and as such, the Defendants herein are entitled to judgment as a matter of law.

18.     The incident alleged in Plaintiff's Complaint was caused in whole or in part by Plaintiff's own contributory and comparative negligence and actions, and Plaintiff's recovery therefore, if any, must be reduced in whole or in part.

19.     Plaintiff's percentage of fault is greater than the aggregate fault of the Defendants herein or any other persons, whether or not parties to this action, such that the Court shall reduce economic damages by the percentage of Plaintiff's comparative fault and furthermore, non-economic damages shall not be awarded.

20.     In accordance with the provisions of Fed. R. Civ. P. 19, objection is made to the failure to join all possible claims against the Defendants herein or others in this action.

21.     Part or all of the damages sought by Plaintiff may not be recoverable under applicable law.

22.     The liability for economic loss, including lost wages, impairment of earning capacity, and hospital and medical expenses sought by Plaintiff is to be

reduced by that portion paid or payable by a collateral source, pursuant to MCL 600.6303.

23. Plaintiff is not entitled to punitive or exemplary damages.

24. To the extent that Plaintiff's Complaint is construed to assert claims arising in tort, then, Plaintiff's claims are barred by the Michigan Tort Liability Act (MTLA), MCL 691.1401, *et seq.* and MCL 691.1407, *et seq.*

25. The proximate cause of any and all injuries suffered by Plaintiff was the result of Plaintiff's voluntary actions that led to his injuries.

26. Plaintiff has failed to allege or establish a deprivation of a constitutional right and/or a protected right and/or a liberty interest.

27. Plaintiff's claims are barred for the reason that Plaintiff has failed to allege any deprivation of a specific constitutional right.

28. At no time was the Plaintiff denied due process protections afforded under the Constitution of the United States or State of Michigan Constitution.

29. The factual allegations in Plaintiff's Complaint are not warranted based upon the evidence or reasonably based upon a belief or sufficient information and, therefore, the Defendants herein are entitled to recover sanctions pursuant to Fed. R. Civ. P. 11.

30. The Defendants herein are entitled to recover attorney fees and costs pursuant to 42 U.S.C. § 1988.

31.    Plaintiff did not suffer any injury because, among other reasons, probable cause existed to stop and arrest Plaintiff and charge Plaintiff, which Plaintiff pled guilty to said charge.

32.    Plaintiff cannot establish retaliatory motive as Defendants' actions were based on legitimate, non-retaliatory reasons.

33.    To the extent that plaintiff agreed to release any and/or all of his claims against any or all of said the defendants, then said defendants are entitled to a dismissal of this case in its entirety.

34.    The Defendants herein reserve the right to add additional affirmative defenses as discovery continues and moves forward.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By: /s/ Mark W. Peyser
       Mark W. Peyser (P35473)
Attorneys for Defendants
450 West Fourth Street
Royal Oak, MI  48067-2557
248-723-0356
mwp@h2law.com

Dated:  November 4, 2022

## DEFENDANTS' RELIANCE UPON JURY DEMAND

Defendants rely upon Plaintiff's request for a jury trial in this matter as requested in his Complaint and likewise make the same request.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

By:   */s/ Mark W. Peyser* (P35473)
        Attorneys for Defendants
450 West Fourth Street
Royal Oak, MI  48067-2557
248-723-0356
mwp@h2law.com

Dated:  November 4, 2022

## PROOF OF SERVICE

The undersigned certifies that on November 4, 2022, the foregoing **Answer to Complaint, Affirmative Defenses, and Reliance Upon Jury Demand** was served upon all parties in the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings via the Court's electronic filing system.

I declare that the statements above are true to the best of my information, knowledge, and belief.

*/s/ Mark W. Peyser*
Attorney for Defendants

4856-3188-6903, v. 1